Slip Op.05-104

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |
|---|---|
| SKF USA INC, SKF FRANCE S.A., and SARMA, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant, | : |
| | : |
| and | : |
| | : |
| THE TIMKEN U.S. CORPORATION, | : |
| | : |
| Defendant-Intervenor. | : |

Before:  WALLACH, Judge
Court No.:  03-00490

**PUBLIC VERSION**

_____

[United States Department of Commerce's Final Results of Administrative Review is Remanded]

Dated: August 24**,** 2005

Steptoe & Johnson, LLP, (Herbert C. Shelley, Alice A. Kipel, and Susan R. Gihring) for Plaintiffs.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; Stephen C. Tosini, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; and Rachael E. Wenthold, Attorney-Advisor, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant.

## OPINION

**Wallach, Judge:**

## I
## Introduction

This matter comes before the court following Plaintiffs' Motion for Judgment Upon the

Agency Record challenging the United States Department of Commerce's ("the Department" or "Commerce") administrative determination in Ball Bearings and Parts Thereof from France, Germany, Italy, Japan and Singapore: Final Results of Antidumping Duty Administrative Reviews, Recission of Administrative Review in Part, and Determination Not to Revoke Order in Part, 68 Fed. Reg. 35,623 (June 16, 2003) ("Final Results"). Commerce's Final Results are found to be unsupported by substantial evidence and not in accordance with law because Commerce failed to properly support its finding and used partial facts available by basing its decision on demonstrably false evidence. As a result, this matter is remanded to Commerce for action consistent with this opinion. This court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2003).

**II**
**Background**

Plaintiffs are producers and exporters of ball bearings subject to the antidumping duty order on ball bearings and parts thereof from France published on May 15, 1989. Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, Spherical Plain Bearings, and Parts Thereof from France, 54 Fed. Reg. 20,902 (May 15, 1989). On February 7, 2003, Commerce published its preliminary results of administrative review for the May 1, 2001, to April 30, 2002, period of review ("POR"). Ball Bearings and Parts Thereof from France, Germany, Italy, and Singapore: Preliminary Results of Antidumping Duty Administrative Reviews, Partial Rescission of Administrative Reviews, and Notice of Intent to Revoke Order in Part, 68 Fed. Reg. 6404 (Feb. 7, 2003).

On January 24, 2003, the Department forwarded the verification outline to SKF USA

Inc., SKF France S.A., and Sarma ("collectively SKF"), indicating that Commerce would conduct verification of SKF France, S.A., and Sarma from February 3, 2003, to February 7, 2003. Defendant's Opposition to Plaintiffs' Motion for Judgment Upon the Administrative Record ("Defendant's Opposition") at 3. All parties agreed that verification would take place at SKF headquarters in Paris. The Department conducted its verification from February 3, 2003, to February 6, 2003. Id at 4. Upon completion of verification, Commerce provided a copy of its Verification Report to SKF and SKF commented on the verification in its administrative case brief. Id. at 5. Commerce then published the Final Results on June 16, 2003. 68 Fed. Reg. 35,623. In the Final Results, Commerce said SKF and Sarma were unprepared to segregate sales by market or by class or kind of subject merchandise and therefore Commerce was unable to verify the accuracy of the reported information. Defendant's Opposition at 6. As a result, Commerce found that SKF did not act to the best of its ability and assigned a margin of 10.08 percent based on partial adverse facts available ("AFA") in the Final Results. Plaintiffs' Motion for Judgment Upon the Agency Record ("Plaintiffs' Motion") at 4.

The parties filed their briefs on this matter in which Plaintiffs claimed they had offered to provide all necessary documentation at verification and were fully prepared to do so, and the Defendant directly disputed that allegation saying that at verification Plaintiffs' representatives had said they were unable to obtain or provide the necessary documentation. The court held a hearing on November 19, 2004, to determine the accuracy of these directly conflicting factual statements made by the parties in their initial briefs. The parties filed their respective post-hearing briefs and the Final Results are now before the court for review.

### III
### Arguments

Commerce argues that it chose to assign SKF a margin based upon partial AFA because "(1) SKF was unable to provide information 'that would have confirmed that Sarma's sales were accurately reported'; and (2) SKF informed Commerce that it was unable to provide <u>necessary</u> documentation" after Commerce requested this information at verification. Defendant's Second Post-Hearing Brief at 2.

SKF says it did not refuse to provide Commerce with the requested supporting documentation at verification; rather Plaintiffs claim that they cooperated with Commerce, but that the Department rejected SKF and Sarma's offers to provide evidence for the verification of the reported sales information. Plaintiffs' Response to Defendant's Second Post-Hearing Brief at 1.

The parties' allegations of facts in their initial briefs were directly conflicting about objectively provable events. The court held a hearing on those conflicting presentations, not to reweigh the evidence presented, but to examine the very existence of the facts as stated by the parties. This opinion follows substantial oral and written arguments submitted by the parties.

### IV
### Applicable Legal Standard

### A
### Clear and Convincing Evidence of Bad Faith

When evaluating whether or not the Government has acted in bad faith, a reviewing court must examine generally if there is a "strong showing of bad faith or improper behavior before [it] may inquire into the thought processes of administrative decisionmakers." <u>Public Power Council</u>

4

v. Johnson, 674 F.2d 791, 795 (1982) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971)). The presumption is that public officials act in good faith when discharging their duties. See, e.g., Saha Thai Steel Pipe Co., Ltd. v. United States, 661 F. Supp. 1198 (CIT 1987). In order to rebut this presumption "one who contends they have not done so must establish that defect by 'clear evidence.'" Carolina Tobacco Co., v. Bureau of Customs and Border Protection, 402 F.3d 1345, 1350 (Fed. Cir. 2005). Clear and convincing evidence means evidence that creates in the trier of fact "an abiding conviction that the truth of a factual contention is 'highly probable.'" Price v. Symsek, 998 F.2d 1187, 1191 (Fed. Cir. 1993) (citing Buildex, Inc. v. Kason Indus., Inc., 849 F.2d 1461, 1463 (Fed. Cir. 1988). It is upon this standard that the court conducted its review of the record of this case.

**B**

**Substantial Evidence**

The Court of International Trade, when reviewing a challenge to the Department's final results of administrative review, will uphold Commerce's determinations unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law. . . ." 19 U.S.C. § 1516a(b)(1)(B)(I) (2003). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S. Ct. 456, 95 L. Ed. 456 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938)). Substantial evidence has been defined by the courts as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by

substantial evidence." <u>Consolo v. Federal Maritime Comm'n</u>, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966).  The court, however, "may not substitute its judgment for that of the [agency] when the choice is 'between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." <u>American Spring Wire Corp. v. United States</u>, 8 CIT 20, 22 (1984) (quoting <u>Penntech Papers, Inc. v. NLRB</u>, 706 F. 2d 18, 22-23 (1st Cir. 1983) (quoting, in turn, <u>Universal Camera</u>, 340 U.S. at 488)).

**V**
**Discussion**

**A**
**SKF Did Not Refuse to Provide Supporting Documentation at Verification**

**1**
**This Is Not A Conflict Regarding Evidence on the Administrative Case Record**

The core conflict between the parties is whether representatives of SKF did or did not offer to provide supporting documentation to Department officials from which they could verify the accuracy of Sarma's reported sales.  If Sarma did, then Commerce's determination cannot stand because it lacks a basis in substantial evidence; if Sarma did not, then Commerce prevails.  No contemporaneous record was made of a refusal to provide evidence to support verification at the time the verification first was conducted, and the issue was raised to Plaintiffs only in the Final Results.  A hearing to resolve the conflicting factual representations made to the court was held on November 19, 2005.

Because of what transpired at verification, at issue in this case is whether Commerce's use of partial AFA for Sarma's sales resulting in a margin of 10.08 percent is supported by substantial evidence and in accordance with law.  Commerce contends that SKF failed to provide

6

supporting documentation at verification as requested by Commerce.  SKF in contrast contends that it attempted to provide all necessary documentation but that Commerce refused to accept the information and concluded verification earlier than scheduled.  Commerce then issued its verification report in which it did not indicate that SKF and Sarma had failed a portion of the verification and instead stated this finding in the Final Results for the first time.

Plaintiffs argue that it was unlawful for the Department to rely on partial AFA in making its final determination with regard to SKF's sales of ball bearings. Plaintiffs' Motion at 11. Plaintiffs' assert that SKF cooperated to the best of its ability to ensure that the Department had information that was adequately verified in order to make its final decision. Id. at 13.  SKF contends that it neither "withheld any information from the Department, nor refused to provide information, nor provided intentionally false or incorrect information to the Department" during the course of the administrative review. Id.  SKF argues that it attempted to provide all the supporting information that the Department requested at verification with regard to Sarma's sales and that they followed the same procedures utilized in prior reviews to ensure that Sarma's sales were accurately verified.[1] Id. at 14-19; Plaintiffs' Reply at 4-7.

Commerce argues that its decision to use partial AFA for Sarma's sales is supported by

[1] SKF argues that in prior verifications Sarma personnel had brought all documentation requested in the verification outline to Paris at SKF and then supplemented this information with additional faxed documentation. Plaintiff's Motion at 16.  SKF provided copies of the most recently completed verification report from the 9th Administrative Review as well as declarations by two Sarma employees. Id. at 16, Tab 10 and Tab 15.  Defendant objects to the submission of these documents on the grounds that SKF did not place them on the original administrative record and therefore they should not be considered by the court. Defendant's Response at 11-16. There is no need for the court to examine the issue of whether it is appropriate for the court to consider the information submitted by SKF as the entire case is remanded to Commerce for reconsideration; however this information is another factor that undermines Commerce's decision to use partial AFA is supported by substantial evidence.

7

substantial evidence. Defendant's Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Defendant's Response") at 16-17. Commerce states that, although it was able to verify portions of Sarma's reported data, it was "unable to verify whether the reported United States and home market sales reflected the entire universe of what SKF France should have reported." Id. at 19. Commerce claims that "[during] the course of verification, it became evident, although SKF possessed the necessary information, it had not arranged for the documentation to be transported from Sarma facilities in St. Vallier" to SKF France. Id. at 4-5. Commerce also claims, that "SKF informed Commerce that there was no one at the Sarma office who could locate and transmit the requested documents." Id at 5. Finally, Commerce asserts that the "record of this review conclusively establishes that the verifiers requested documentation for segregated sales and SKF failed to provide the requested documentation," and it is this refusal that led Commerce to find that SKF failed to cooperate to the best of its ability. Id. at 15; 25-27. As a result, Commerce states that its decision to apply partial AFA is supported by substantial evidence and in accordance with law.

As discussed below, Plaintiffs must prevail. They have provided conclusive proof to the court that Commerce's record in this matter contains material errors of fact.

**2**
**Plaintiffs Demonstrated to the Court That Department Verifiers Did Not Accurately Portray the Events at Verification**

The representations made to the court by both Plaintiffs and Defendant call into question the exact sequence of events that transpired at verification leading to the core issue of whether or not Commerce was justified in utilizing partial AFA in its Final Results. SKF's contention is that after performing several verification steps, the

8

> verifiers then requested to see a further split of third country/home
> market/U.S. sales and products under investigation/products not
> under investigation. It was explained to the verifiers that [SKF
> Employee A] had brought the same reports as she had in previous
> reviews. After this explanation, the verifiers neither made any
> specific request for any further information nor indicated that there
> was an open item as to the reconciliation of Sarma's quantity and
> value.

Plaintiffs' Motion at 18 (citing Landrum Decl. ¶¶ 8, 9; [SKF Employee A] Decl. ¶ 10).

Commerce in contrast argues that "when Sarma was asked to provide certain source

documentation as to quantity and value and explained that either Ms. Landrum or David

Tanenbaum stated that Sarma would be unable to provide necessary documents." Defendant's

Second Post-Hearing Brief at 29.

Only one of these two versions is a true and accurate representation of reality. Although

it is conceivable that each version is accurate in the mind of the party asserting that perspective,

what has been presented to the court are two directly conflicting sets of facts. The court's

evidentiary hearing attempted to resolve the factual conflict. At the hearing, the court was able to

test the recollections of Commerce officials as well as SKF officials. There was still a conflict in

testimony between the parties. Testifying Commerce officials did not clearly recollect whether

they had specifically requested source documentation on quantity and value, rather, they relied on

their habit of requesting such supporting documentation, and their testimony that SKF had

specifically said it would be impossible to obtain that data on such short notice. SKF officials on

the other hand testified that they communicated their willingness and ability to provide such

source documentation at the time of verification, but that Commerce declined to accept such

supporting information.

With no advance notice, in open court, [SKF Employee A], the SKF employee who, according to Commerce, was unable to provide data, contacted her office in France. At the request of the court Defendant's witness identified specific items from Defendant's exhibits which he would have requested at verification. SKF officials were able to send facsimile copies of the supporting documentation. That SKF was willing and able to perform this task with only a few minutes notice, almost 2 years after verification, demonstrated to the satisfaction of the court that [SKF Employee A] certainly possessed the ability to do what Commerce claimed she told its verifiers was an impossibility.

According to SKF, "[v]erification of Sarma's information and data began on Thursday morning, with a full two days remaining, according to the verification schedule." Plaintiffs' Motion at 22. SKF states that it attempted to provide the Department verifiers with various suggestions during the verification process to ensure that Sarma's quantity and value of sales were verified accurately. Id. SKF stated repeatedly, in its briefs, that it offered the verifiers the opportunity to "select invoices which Sarma could print out and fax to the verifiers to confirm accurate reporting of Sarma's sales" or to select sales at random and "Sarma could print and fax to the verifiers the invoices." Id. at 23. But, according to Plaintiffs, the verifiers "rejected both suggestions" and instead chose to end verification one day early. Id. SKF's versions of this particular series of events is strongly supported by the ability of SKF officials to provide the information from the subject period of review to the court on the day of the hearing.

Because it is based solely on what allegedly occurred at verification, the Department's final decision to apply partial AFA based on Sarma's alleged refusal and failure to provide supporting documentation is unsupported by substantial evidence. Universal Camera Corp., 340

10

U.S. at 477. The evidence presented to the court in documents and at the hearing demonstrates that SKF's representations of the events that occurred at verification are accurate and true. While the evidence presented by SKF to the court might not rise to the level of "well nigh irrefragable proof" necessary to show that Commerce intentionally harmed SKF, such as an act of bad faith, see Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1337 (Fed. Cir. 2004), there is well nigh irrefragable evidence that Commerce's representations regarding the events which occurred at verification were (1) not factually accurate[2] and (2) that they harmed SKF through the use of partial AFA.[3] See, e.g., Ammex, Inc. v. United States, 23 CIT 549, 62 F. Supp. 2d 1148 (1999); Saha Thai Steel Pipe Co. v. United States, 11 CIT 257, 661 F. Supp. 1198 (1987). On remand, Commerce must provide Plaintiffs an opportunity to supply the supporting information the Department claims to have originally requested on Sarma's home market, in addition to U.S. sales of ball bearings in order to ensure that the Final Results are supported by substantial evidence.

**B**
**Commerce's Final Results Based Upon Adverse Facts Available is Contrary to Law and Not Supported by Substantial Evidence**

SKF further contends that it was denied a reasonable opportunity to provide the information requested by Commerce. Plaintiffs' Motion at 23, 32. SKF argues that it was unaware of Commerce's decision to use adverse facts available because there was no indication

---

[2] As discussed above, while it is not absolutely clear whether Commerce's misrepresentations arose from an inability to perceive and/or recollect or from actual misconduct, it is clear that Commerce's Final Results contained material errors of fact.

[3] The court has no question that the verifiers' version of the facts is false; its only question is whether the falsehood is caused by faulty recollection or actual bad faith.

11

in the Verification Report of such findings; instead Commerce's decision was only revealed in the Final Results when it was too late for SKF to comment. Plaintiffs' Reply at 2, 9-11. SKF argues that based upon the sequence of events which transpired, Commerce's decision to use partial AFA is unsupported by substantial evidence. Plaintiffs' Motion at 26. According to Plaintiff, Commerce failed to find that SKF did not act to the best of its ability to comply with the Department's requests for information. Id. at 26.

Commerce claims that SKF had ample opportunity during the administrative process to comment on the verification and provide supplemental information, however, SKF chose not to do so. Defendant's Response at 8. Commerce claims that if SKF had raised the arguments that it does now, "Commerce would have considered the documents, [just] as Commerce addressed the arguments raised in SKF's briefs." Id. Commerce states that it provided a copy of the verification report to SKF and SKF commented on the report in its case and rebuttal briefs. Id. However, SKF did not provide any additional supporting declarations or documents at that time. Id. Commerce claims that because the agency record provides an "adequate explanation for the agency's determination," there is no evidence of bad faith or improper behavior by the agency decision makers. Id. at 13.

Commerce's mandate is to determine dumping margins as accurately as possible. Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States, 25 CIT 1150, 178 F. Supp. 2d 1305, 1317 (2001). Commerce must thus gather accurate data from respondents, after giving respondents a reasonable opportunity to participate in the review. See Bowe-Passat v. United States, 17 CIT 335, 339 (1993). Ultimately, respondents have the responsibility of creating an adequate record. Tianjin Mach. Imp. & Exp. Corp. v. United States, 16 CIT 931, 936, 806 F. Supp. 1008, 1015

(1992). Commerce, however, has the statutory authority to use facts otherwise available, subject to 19 U.S.C. § 1677m(c)(1),[4] (d),[5] and (e)[6] if

---

[4] 19 U.S.C. § 1677m(c)(1)states that

> If an interested party, promptly after receiving a request from the administering authority or the Commission for information, notifies the administering authority or the Commission (as the case may be) that such party is unable to submit the information requested in the requested form and manner, together with a full explanation and suggested alternative forms in which such party is able to submit the information, the administering authority or the Commission (as the case may be) shall consider the ability of the interested party to submit the information in the requested form and manner and may modify such requirements to the extent necessary to avoid imposing an unreasonable burden on that party.

[5] Pursuant to 19 U.S.C. § 1677m(d)

> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority . . . shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle. If that person submits further information in response to such deficiency and either–
>
> > (1) the administering authority or the Commission (as the case may be) finds that such response is not satisfactory, or
> >
> > (2) such response is not submitted within the applicable time limits,
>
> then the administering authority or the Commission (as the case may be) may, subject to subsection (e) of this section, disregard all or part of the original and subsequent responses.

[6] Pursuant to 19 U.S.C. § 1677m(e)

> In reaching a determination under section 703, 705, 733, 735, 751, or 753 the administering authority and the Commission shall not decline to consider information that is submitted by an interested party and is necessary to the determination but does not meet all the applicable requirements established by the

13

(1) necessary information is not available on the record, or

(2) an interested party or any other person–

     (A) withholds information that has been requested by the administering authority or the Commission under this title,

     (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,

     (C) significantly impedes a proceeding under this title, or

     (D) provides such information but the information cannot be verified as provided in section 1677m(I) of this title,

the administering authority and the Commission shall, subject to section 1677m(d) of this title, use the facts otherwise available in reaching the applicable determination under this subtitle.

19 U.S.C. § 1677e(a); Reiner Brach GmbH & Co. KG v. United States, 206 F. Supp. 2d 1323, 1329-30 (CIT 2002). If Commerce acts in accordance with its statutory requirements and uses partial or total facts available, but finds that

---

administering authority or the Commission, if–

     (1) the information is submitted by the deadline established for its submission,

     (2) the information can be verified,

     (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,

     (4) the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by the administering authority or the Commission with respect to the information, and

     (5) the information can be used without undue difficulties.

14

an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle, may use an inference that is adverse to the interests of that party in selecting from among facts otherwise available. Such adverse inference may include reliance on information derived from –

(1) the petition;

(2) a final determination in the investigation under this subtitle,

(3) any previous review under section 1675 of this title or determination under section 1675b of this title, or

(4) any other information placed on the record.

19 U.S.C. § 1677e(b); see Nippon Steel Corp. v. United States, 337 F.3d 1373, 1381 (Fed. Cir. 2003). When Commerce applies an adverse inference, it "needs to articulate why it concluded that a party failed to act to the best of its ability, and explain why the absence of this information is of significance to the progress of its investigation." Mannesmannrohren-Werke AG v. United States, 23 CIT 826, 77 F. Supp. 2d 1302, 1313-14 (1999).

When a respondent fails to respond to Commerce's requests and the information requested is material to the investigation, this court has found such behavior to be unreasonable and the use of adverse facts available appropriate. See Branco Peres Citrus, S.A. v. United States, 25 CIT 1179, 173 F. Supp. 2d 1363, 1374-75 (2001); Am. Silicon Techs. v. United States, 240 F. Supp. 2d 1306, 1311 (CIT 2002). However, Commerce's failure to provide respondents with sufficient notice can render the decision "unsupported by substantial evidence and otherwise contrary to law." Usinor Sacilor v. United States, 19 CIT 714, 893 F. Supp. 1112, 1141-42 (1995) *aff'd in part and rev'd in part*, 215 F.3d 1350 (Fed. Cir. 1999) (the Department failed to

15

notify plaintiffs that it lacked the necessary information to assess likely effects of a subsidy program in a countervailing duty case and the plaintiffs were not aware of the deficiency until the final results).

In the case of uncooperative respondents, it is within Commerce's discretion to choose the secondary bases on which it will rely to support its use of adverse inferences;

> [p]articularly in the case of an uncooperative respondent, Commerce is in the best position, based on its expert knowledge of the market and the individual respondent, to select adverse facts that will create the proper deterrent to non-cooperation with its investigations and assure a reasonable margin. Commerce's discretion in these matters, however, is not unbounded.

F.LLI De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000). Section 1677e(b) is geared to promote cooperation by respondents, but not impose "punitive, aberrational, or uncorroborated" margins; this is evidenced in the 19 U.S.C. § 1677e(c) corroboration requirement which intends the AFA rate "to be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance." De Cecco, 216 F.3d at 1032. "Thus, the margin selected by Commerce must have some relation to the respondent's dumping margin." Id.; see also NSK Ltd. v. United States, 346 F. Supp. 2d 1312, 1335 (CIT 2004).

In this case, SKF claims Commerce acted as it did in Bowe Passat, where it disclosed the deficiencies in the parties' submissions after it was too late to rectify any errors, i.e. after the final results were issued. Bowe Passat, 17 CIT at 343. SKF says it did not attempt to provide the missing information because it did not learn that it had allegedly provided insufficient information until the Final Results were published and at that point the deadline for submission of new factual information had passed. 19 C.F.R. § 351.301(b)(2) (2003); see also Ta Chen

16

Stainless Steel Pipe, Ltd. v. United States, 23 CIT 804 (1999).

"Section § 1677m(d) of title 19 requires Commerce to take action in response to a party's deficient submission: '[Commerce] shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this title.'" Hebei Metals & Minerals Imp. & Exp. Corp. v. United States, 366 F. Supp. 2d 1264, 1271 (CIT 2005) (citing 19 U.S.C. § 1677m(d)). Part of Commerce's responsibility in making accurate antidumping determinations is to ensure that the parties' have notice of Commerce's decisions and be permitted to comment on its methodology and analysis. See NEC Corp. v. United States, 151 F.3d 1361, 1374 (Fed. Cir. 1998) (citing 19 U.S.C. § 1677m(d) - (I)).  In fact, the Federal Circuit has held that "Commerce must publish its preliminary results, it must take an initial public position on the disputed issues in the [review], and if necessary modify its position." Id.

Commerce's announcement of its decision to use partial AFA for the first time in the Final Results, and to offer no opportunity for SKF to respond, correct, or clarify while finding SKF had not cooperated to the best of its ability, is unsupported by substantial evidence and not in accordance with law.  Commerce has placed the burden on SKF to create an accurate record; however, Commerce had its own obligation to ensure that SKF was fully aware of what information the Department sought and the form in which it sought the data. See Chinsung Indus. Co., Ltd. v. United States, 13 CIT 13, 106, 705 F. Supp. 598, 601 (1989) (the burden of creating an adequate record rests with respondents).  Clarity regarding what information is requested by Commerce is important, especially in cases such as this where there was confusion as to whether

17

or not requests for data were made and whether or not these requests were refused. See Queen's Flowers de Columbia v. United States, 21 CIT 968, 980, 981 F. Supp. 617, 628 (1997) ("alleged response deficiency cannot support application of [best information available] where the information sought was apparently never requested.") (citation omitted). Pursuant to 19 U.S.C. § 1677m(d), if the Department wished to place the burden of error on SKF, it had to make clear and give SKF a chance to correct the error prior to the issuance of a final decision. See Ta Chen, 23 CIT at 47.

Commerce's notification in the final decision memorandum that SKF had failed to provide the requested information and that Sarma had not cooperated does not constitute the timely notice required by 19 U.S.C. § 1677m(d). As a result, its final decision to utilize partial AFA on Sarma's sales is unsupported by substantial evidence and not in accordance with law. Commerce, on remand, must re-evaluate and re-examine its decision by providing evidentiary support for utilizing partial AFA unrelated to SKF's alleged failure to offer evidence at verification, or in the alternative it must re-calculate SKF's margin using SKF's own information.

**V**

**Conclusion**

For the reasons stated above, this matter is remanded for action for action consistent with this opinion.

/s/ Evan J. Wallach
Evan J. Wallach, Judge

Date:  August 24, 2005
         New York, New York