# United States Court of Appeals for the Federal Circuit

---

**HITACHI ENERGY USA INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**HYUNDAI HEAVY INDUSTRIES CO., LTD.,
HYUNDAI CORPORATION, USA,**
*Defendants-Appellants*

---

2020-2114

---

Appeal from the United States Court of International Trade in No. 1:16-cv-00054-MAB, Judge Mark A. Barnett.

---

Decided: May 24, 2022

---

MELISSA M. BREWER, Kelley Drye & Warren, LLP, Washington, DC, argued for plaintiff-appellee. Also represented by ROBERT ALAN LUBERDA, DAVID C. SMITH, JR.

JOHN JACOB TODOR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JEFFREY B. CLARK, JEANNE DAVIDSON, FRANKLIN E. WHITE, JR.; DAVID W. RICHARDSON, Office of the Chief

Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

RON KENDLER, White & Case LLP, Washington, DC, argued for defendants-appellants. Also represented by DAVID EDWARD BOND.

————————————

Before NEWMAN, LOURIE, and DYK, *Circuit Judges*.

NEWMAN, *Circuit Judge*.

Appellants Hyundai Heavy Industries Co. and Hyundai Corporation, USA (collectively, "Hyundai") seek review of an antidumping duty determination for large power transformers imported from the Republic of Korea. This is the second administrative review ("POR2"). The results of the Original Investigation ("OI") are reported at *Large Power Transformers from the Republic of Korea: Final Determination of Sales at Less Than Fair Value*, 77 Fed. Reg. 40857 (July 11, 2012) ("Issues and Decision Memorandum").

When an administrative review is requested, the antidumping duty is redetermined. 19 U.S.C. § 1675(a)(1)(b). The first administrative review ("POR1") is reported at *Large Power Transformers from the Republic of Korea: Final Results of Antidumping Administrative Review; 2012-2013*, 80 Fed. Reg. 17034 (Mar. 31, 2015).

The second administrative review was initiated in August 2014, and the results are reported at *Large Power Transformers from the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2013-2014*, 81 Fed. Reg. 14087 (Mar. 16, 2016). This determination was subject to four appeals to the Court of International Trade, with three remands to the Department of Commerce ("Commerce"). The court's final decision, reported at *ABB*,

*Inc., v. United States*, 443 F. Supp. 3d 1354, 1357 (Ct. Int'l Trade 2020), is the subject of this appeal.[1]

This appeal of the second review concerns the application of 19 U.S.C. § 1677m(d), which requires Commerce to notify and permit a party to remedy or explain any deficiency in information provided during an investigation. Commerce asserts that this statute did not apply to the circumstances herein; thus Commerce did not permit Hyundai to provide additional information relevant to Commerce's change of methodology concerning normal value and sales price of service-related revenue. Commerce then applied an adverse inference and partial facts available to increase the dumping margin.

We conclude that Commerce erred in its statutory compliance as a matter of law, and we remand for redetermination of the antidumping duty applied to Hyundai's imports, based on the calculation of service-related revenue. Hyundai has the statutory right to correct the deficiencies that led to the application of adverse inferences and partial facts available.

## BACKGROUND

An antidumping duty may be levied on imported products that are sold or likely to be sold in the United States at less than fair value, when such sales threaten or cause material injury to a domestic industry. 19 U.S.C. § 1673.

---

[1] There have been third, fourth, and fifth administrative reviews, and appeals of the third and fifth administrative reviews previously reached the Federal Circuit. The subject matter of those appeals is unrelated to the issue now before us. *See Hyundai Heavy Indus. Co., Ltd. v. United States*, 819 Fed. Appx. 937 (Fed Cir. 2020) (third review); *Hyundai Elec. & Energy Sys. Co., Ltd. v. United States*, 15 F.4th 1078 (Fed. Cir. 2021) (fifth review).

To determine whether an imported product is sold at less than fair value, Commerce determines the normal value of the product in the home market, and the export (sales) price in the United States. 19 U.S.C. §§ 1675(a)(2)(A), 1677(b)(a). "Normal value" is "the price at which the foreign like product is first sold . . . for consumption in the exporting country." 19 U.S.C. § 1677b(a)(1)(B)(i).

This appeal concerns methodology for valuation of service-related revenue associated with Korean large power transformers, in determining normal value and sales price. In POR2, on a first appeal of Commerce's decision, the Court of International Trade remanded this issue to Commerce, at the Government's request. In response, Commerce changed its methodology for determination of service-related revenue.

Hyundai then asked Commerce for permission to provide additional data and information. Hyundai wrote: "With respect to the factual flaws discussed above, the Department should reopen the record and issue a supplemental questionnaire to collect information regarding the New Test for service-related revenue." Appx10067. Hyundai proposed "If the Department continues to apply the New Test, it must provide Hyundai with an opportunity to place relevant information on the record, by issuing a supplemental questionnaire." *Id.* at 10069. Commerce denied the request, and calculated the antidumping margin based on the original information.

Hyundai reported service-related revenue in accordance with the Commerce questionnaire. *Antidumping Duty Questionnaire – Hyundai Heavy Industries*, C18 (Nov. 18, 2014) *see Response to Supplemental Sections B and C Questionnaire* (Jun. 3, 2015) ("Where the terms of sale require Hyundai to perform such services, the gross unit price includes the value of services required.").

In the second administrative review, Hyundai followed the same procedure as previously accepted by Commerce during the original investigation and the first administrative review. *See POR1 Final Results*, 80 Fed. Reg. at 17035. ABB Enterprise Software, Inc. (now Hitachi Energy USA, Inc., herein, "ABB") objected to this methodology, stating that it overstated the prices of Hyundai's United States sales. Commerce rejected the objection, stating that it had reviewed Hyundai's invoices and purchase orders and that Hyundai had properly responded to the questionnaire. Commerce stated:

> Based on our review of the record evidence at verification and comments by interested parties, we have determined to rely upon Hyundai's reported [gross unit price] for purposes of calculating net U.S. price for its sales . . . We find that there is no evidence, based on the invoices and purchase orders examined at verification, to indicate that Hyundai has separate revenues which it has failed to report to Commerce.

Original Investigation, *Issues & Decision Memorandum*, Comment 4 (July 2, 2012) (summarized at 77 Fed. Reg. 40857 July 11, 2012).

ABB appealed to the Court of International Trade, objecting to several aspects of the Commerce procedure, including service-related revenues. Commerce requested a voluntary remand "to reconsider its application of its revenue-capping practice in this case, in light of this practice . . . [and to] evaluate whether its application of this practice is consistent with respect to both respondents." *Def.'s Suppl. Mem. Addressing Standard for Voluntary Remand, ABB, Inc. v. United States,* No. 1:16-cv-00054 (Ct. Int'l Trade May 19, 2017), ECF No. 79; Appx 9945. The court stated that "Commerce's concerns are substantial and legitimate" and remanded for consideration. *ABB, Inc. v.*

*United States*, 273 F. Supp. 3d 1200, 1205 (Ct. Int'l Trade 2017).

On remand, Commerce revised its methodology for determining service-related revenue:

> Commerce's capping methodology is not dependent upon whether a respondent must provide the service under the terms of sale as Hyundai contends, but whether such services were provided and whether the revenue amounts collected for the provision of such services exceed the cost of those services. Neither is Commerce's capping methodology dependent upon whether the service-related expenses and revenues are separate line-items on an invoice to the unrelated customer . . . Commerce's capping methodology, generally, may nevertheless be applied notwithstanding whether the amounts are specified in sales contracts with, or invoices to, the customer. If a respondent collects, as a portion of the final price to the customer, a portion of revenue which is dedicated to covering a service-related expense, and that service-related expense is less than the revenue set aside to cover the expense, then this is service-related revenue which is part of the material terms of sale and must be capped.

*Final Results of Redetermination Pursuant To Court Remand, ABB, Inc. v. United States*, No. 1:16-cv-00054 (Ct. Int'l Trade Feb. 7, 2018), ECF No. 95; Appx105-06. Commerce stated:

> Hyundai cannot prevent the application of Commerce's capping methodology based on a technicality concerning whether a respondent chooses to separately itemize service-related charges in sales contracts or invoices. Commerce's determination in this remand redetermination is not a change in methodology, but is instead an appropriate

application of our capping methodology pursuant to
the statute and past practice.

Appx106.

Commerce changed the way it was evaluating the data,
for these changes required identification of which services
were provided, and cost and price information regardless of
whether they were separately negotiated or part of the
sales price. Since Commerce found Hyundai's original sub-
missions inadequate to determine the service-related reve-
nue in this adjusted manner, Hyundai requested
permission to provide additional information in conformity
with 19 U.S.C. § 1677m(d). *See Letter from Hyundai Heavy
Indus. Co. to Wilbur L. Ross, Jr., Secretary of Commerce*,
Case No. A-580-867 (Dep't of Commerce Jan. 16, 2018) (*Re-
questing Reopening of the Record in Order to Submit New
Information*); Appx10064-100102. The statute provides:

(d) **Deficient submissions**.

If the administering authority or the Commission
determines that a response to a request for infor-
mation under this subtitle does not comply with the
request, the administering authority or the Com-
mission (as the case may be) shall promptly inform
the person submitting the response of the nature of
the deficiency and shall, to the extent practicable,
provide that person with an opportunity to remedy
or explain the deficiency in light of the time limits
established for the completion of investigations or
reviews under this subtitle.

19 U.S.C. § 1677m(d)

In its first remand Commerce applied a new test. As
described by Hyundai, "Under the New Test, which the De-
partment now seeks to apply in the Draft Remand, service-
related revenue exists if certain sales documents identified
revenue for the service, regardless of whether Hyundai was

required to provide the service under the terms of sale." Appx10069. Commerce applied its new method of determining whether service-related revenue existed for Hyundai, and then "the Department immediately states that 'information is missing from the record due to Hyundai's failure to report service-related revenues' and that this justifies the application of partial facts available." *Id.*

In its request to submit additional information, Hyundai stated that "the Department appears to view its Original Test for service-related revenue to be incorrect. Reopening the factual record is therefore not only within the Department's discretion, it is necessary." *Id.* at 10085. Denying Hyundai's request to provide additional information, Commerce stated that its "determination in this remand redetermination is not a change in methodology, but is instead an appropriate application of our capping methodology pursuant to the statute and past practice." *Id.* at 106. Commerce characterizes Hyundai's responses as "avoidance," stating that "Hyundai cannot prevent the application of Commerce's capping methodology based on a technicality concerning whether a respondent chooses to separately itemize service-related charges in sales contracts or invoices." *Id.*

Commerce found that "Hyundai failed to cooperate to the best of its ability by not providing the information requested. Therefore, partial adverse facts available is warranted." *Id.* at 108. Commerce then determined the normal value and sales price for service-related revenue, on adverse inference and partial facts available, and increased Hyundai's dumping margin to 25.51 percent. *Id.* at 116. Commerce acknowledged Hyundai's request to reopen the investigation and allow the submission of information related to the new methodology but did not respond, stating only that Hyundai failed to cooperate. *Id.* at 108.

Hyundai appealed, stating that "the Department's conclusions rest on the unreasonable assertion that Hyundai

should have known that the Department would retroactively revise its test with respect to service-related revenue two years after it issued the Final Results." *Defendant-Intervenors' Comments in Opposition to the Final Results of Redetermination Pursuant to Court Remand*, *ABB Inc. v. United States*, No. 1:16-cv-00054 (Ct. Int'l Trade Mar. 20, 2018), ECF No. 106. It is not disputed that Hyundai responded fully to Commerce's questionnaire.

Hyundai also argued that the additional information Commerce was requesting was contained in previously submitted "invoices listing separate line items for services[.]" Final *Results of Redetermination Pursuant to Court Remand*, *ABB Inc. v. United States*, No. 1:16-cv-00054 (Ct. Int'l Trade Apr. 26, 2019), ECF No. 150; Appx41-42. However, Commerce refused to consider information from this source, stating that Hyundai "did not alert" Commerce to "invoices listing separate line items for services" and therefore "failed to cooperate to the best of its ability." *Id.* at 41-42.

The Court of International Trade observed that § 1677m(d) requires Commerce to notify and permit remedy of any deficiency: "The Government further argues that Commerce did not have an obligation to comply with § 1677m(d) because the agency was not aware of the deficiencies in Hyundai's reporting until it discovered the underlying information evincing Hyundai's misreporting for the first time at verification."[2] *ABB Inc. v. United States*,

---

[2]    "Verification" is conducted, 19 U.S.C. § 1677m(i)(3), by visiting the foreign company's facilities to review "all files, records and personnel" relevant to the inquiry. *See* 19 C.F.R. § 351.307(d). Commerce conducted onsite verification at Seoul and Ulsan, Korea from July 16 through July 24, 2015. Mem. from Dep't of Commerce to File, Case No.

355 F. Supp. 3d 1206, 1216 (Ct. Int'l Trade 2018). The court stated: "When a respondent provides seemingly complete, albeit completely inaccurate, information, § 1677m(d) does not require Commerce to issue a supplemental questionnaire seeking assurances that the initial response was complete and accurate." *Id.* at 1222.

However, the court found: "It was not until Commerce sorted through Hyundai's sales documentation that the agency recognized that Hyundai's documentation was inconsistent with its reporting." *Id.* The court concluded, "under these circumstances, Commerce was not statutorily mandated to provide Hyundai a subsequent opportunity to remedy the deficiency." *Id.* at 1223.

The court remanded for redetermination, explaining that Commerce had impermissibly relied on internal Hyundai communications as evidence of service-related revenue. *Id.* The remand included instructions "that the agency may not apply its capping methodology to those transactions or services for which Commerce relied only on internal communications among Hyundai employees or affiliates" to determine service-related revenue. *Id.*

In response to this second remand, Commerce applied the court's ruling that Hyundai's internal communications were not evidence of service-related revenue. *Final Results of Redetermination Pursuant to Court Remand ABB Inc. v. United States,* No. 1:16-cv-00054 (Ct. Int'l Trade Apr. 26, 2016), ECF No. 150; Appx46. Commerce accepted Hyundai's argument that certain revenues were not service related, and Commerce did not apply the "capping" methodology to these revenues. "The documentation for SEQU 1 does not contain any service-related revenue." *Id.* at 42. However, Commerce did not accept Hyundai's

A-580-867 (Dep't of Commerce Aug. 31, 2015) (on file with author). Appx9264.

renewed request for permission to provide additional information on service-related revenue to comport with Commerce's new procedures.

Based on the continued application of adverse facts available, and applying changes to other factors, Commerce assessed a dumping margin of 16.58 %. *Id.* at 57. On Hyundai's appeal, the court again remanded to Commerce on issues not challenged on this appeal. On this remand, Commerce addressed those issues and set the dumping margin at 16.13%. *Final Results of Redetermination Pursuant to Court Remand, ABB Inc. v. United States,* No. 1:16-cv-00054 (Ct. Int'l Trade Apr. 14, 2020), ECF No. 182; Appx4-14. Hyundai appealed a fourth time, and the court sustained Commerce's Third Remand Results. *ABB, Inc. v. United States,* 437 F. Supp.3d 1289 (Ct. Int'l Trade 2020).

Now, before us, Hyundai presses its objection to Commerce's refusal to allow correction of any deficiencies in the information previously submitted, as required by 19 U.S.C. § 1677m(d). We conclude that Hyundai is correct that the statute requires the opportunity to remedy any deficiencies in the information of record.

DISCUSSION

### *Standard of Review*

On appeal of a decision of the Court of International Trade concerning an antidumping duty determination of the Department of Commerce, we review the decision of Commerce on the same standard that is applied by the Court of International Trade. "Commerce's determination should therefore be upheld unless it is unsupported by substantial evidence on the record or is not in accordance with law." *Dupont Teijin Films USA, LP v. United States,* 407 F.3d 1211, 1215 (Fed. Cir. 2005); *see also SNR Roulements v. United States,* 402 F.3d 1358, 1361 (Fed. Cir. 2005).

"[T]his court must review the entire record for substantial evidence and compliance with the law.  Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Am. Silicon Techs. v. United States, 334 F.3d 1033, 1036-37* (Fed Cir. 2003) (citing *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 477 (1951)).  "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i).

### *The Issues on Appeal*

Hyundai appeals three rulings of Commerce that were sustained by the Court of International Trade: (1) Commerce's refusal to permit Hyundai to remedy the announced deficiency in reported information about service-related revenue, as required by 19 U.S.C. § 1677m(d); (2) Commerce's ruling that Hyundai had not cooperated to the best of its ability, thereby supporting use of adverse inferences, 19 U.S.C. § 1677e(b); and (3) Commerce's use of adverse facts available in these circumstances.

### A

### **Hyundai's Request to Supplement the Record**

Hyundai's request to supplement the record is in accordance with law.  After Commerce modified its methodology for determination of service-related revenue after the first remand, Hyundai sought to provide data and information related to the new methodology. *See Final Results of Redetermination Pursuant to Court Remand, ABB Inc. v. United States*, No. 1:16-cv-00054 (Ct. Int'l Trade Apr. 26, 2019), ECF No. 150; Appx28-57.

Hyundai states that its record documents already showed the break-out information now required by

Commerce. In response to Commerce's original questionnaire and "consistent with prior segments of this proceeding," Hyundai separately reported service-related revenue where there existed "a separate purchase order for . . . the transformer (*e.g.*, supervision) but that related to the transformer." *Letter from Hyundai to Commerce Re: Antidumping Administrative Review of Large Power Transformers from Korea - Response to Sections B and C Questionnaires* (Jan. 26, 2015); Appx2408. Hyundai explained that the relevant service-related revenue was provided in separate fields as Commerce had requested. "ADDPOPRU is sales amount under a separate purchase order for services that were not included in the purchase order for the transformer (*e.g.*, supervision), but that are related to the transformer. ADDPOEXPU is the expense associated with the additional services." *Id.*

In response to Hyundai's submission, Commerce sent a supplemental questionnaire directed to several items. *U.S. Department of Commerce, Supplemental Questionnaire for Sections B and C of Hyundai Heavy Industries and Hyundai Corporation USA's Responses to the Antidumping Duty Questionnaire* (May 22, 2015); Appx6140. Hyundai responded to each question. Concerning service-related revenue, Hyundai explained, "Where the terms of sale require Hyundai to perform such services, the gross unit price includes the value of services required." *Hyundai Heavy Industries Co, Ltd., Antidumping Administrative Review of Large Power Transformers from South Korea - Response to Supplemental Sections B and C Questionnaires* (Jun. 3, 2015); Appx6162.

Commerce had previously rejected ABB's objections to Hyundai's responses in Commerce's initial action on the second administrative review:

> We cannot conclude that necessary information is not available on the record, nor can we find that Hyundai withheld information requested by the Department, that it failed to provide such information in the form or manner requested, that it acted to significantly impede the proceeding, or that it provided requested information that could not be verified.

*Issues and Decision Memorandum for Final Results of Antidumping Duty Administrative Review: Large Power Transformers from the Republic of Korea*: 2013-2014, Comment 15 (Mar. 8, 2016); Appx9649. Commerce stated that Hyundai's documentation "show[s] no indication that Hyundai improperly reported its sales data." *Id.*

These findings cannot be reconciled with Commerce's later ruling that Hyundai had "not cooperate[d] to the best of its ability." Commerce supported its refusal to permit Hyundai to provide additional information, by stating that Hyundai had not previously provided information to the best of its ability: "We have determined not to allow Hyundai to submit such information because Hyundai had [ample] opportunity to submit the factual information during the course of the original proceeding, pursuant to 19 CFR 351.301." *Letter from Dep't of Commerce to Hyundai Heavy Industries Co., Ltd. & Hyundai Corporation USA, Re: Remand Order of the U.S. Court of International Trade for ABB Inc. v. United States* concerning *Antidumping Duty Administrative Review of Large Power Transformers from the Republic of Korea; 2013- 2014: Request to Submit Service-Related Revenue Data from Hyundai Heavy Industries Co., Ltd. and Hyundai Corporation USA*, No. 1:16-cv-00054, Slip Op. 18-156 (Mar. 22, 2019); Appx10368.

After the first remand, Commerce determined that service-related revenue would no longer be defined by the terms of the sale as it was in the original investigation, the first review, and the initial findings of the second review.

"Commerce's capping methodology is not dependent upon whether a respondent must provide the service under the terms of sale as Hyundai contends, but whether such services were provided and whether the revenue amounts collected for the provision of such services exceed the cost of those services. Neither is Commerce's capping methodology dependent upon whether the service-related expenses and revenues are separate line-items on an invoice to the unrelated customer."

*Final Results of Redetermination Pursuant To Court Remand*, *ABB Inc. v. United States*, No. 1:16-cv-00054 (Ct. Int'l Trade Feb. 7, 2018), ECF No. 95; Appx105-106. Thus documentation of the line-item breakouts became a factor in the administrative review.

Commerce's denial of Hyundai's request to provide any necessary information was contrary to the statute, which states in relevant part that Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency." 19 U.S.C. § 1677m(d). The Court of International Trade has previously interpreted the statute to permit supplementation. *See SKF USA Inc. v. United States*, 391 F. Supp. 2d 1327, 1336 (Ct. Int'l Trade 2005) ("Clarity regarding what information is requested by Commerce is important, especially in cases such as this where there was confusion as to whether or not requests for data were made and whether or not these requests were refused."). In *SKF* the court admonished that it is impermissible for Commerce to delay reporting that a respondent has provided insufficient information until after it is too late to correct. "Pursuant to 19 U.S.C. § 1677m(d), if the Department wished to place the burden of error on SKF, it had to make clear and give SKF a chance to correct the error prior to the issuance of a final decision." *Id.* at 1336-37.

In a separate proceeding on a later administrative review and a different issue, *Hyundai Steel Co. v. United States*, 282 F. Supp. 3d 1332, 1349 (Ct. Int'l Trade 2018), the court held that Commerce's failure to timely notify a party of deficiency "is itself a violation of § 1677m(d)." It is undisputed that no such notification was given. The government states in its brief that Commerce was not required to permit Hyundai to provide additional information because the deficiency in question was not determined until "verification." Gov't Br. 31. However, the statutory entitlement to notice and opportunity to remedy any deficiency is unqualified. Hyundai also observes that data with the breakouts of revenue in separate line items were already in Commerce's possession, although it was not required by Commerce's questionnaire. Commerce erred, in denying the opportunity to remedy the asserted deficiency.

## B

## Adverse Inferences and Applied

## Partial Facts Available

Commerce drew adverse inferences and applied partial facts. When necessary information is missing or unavailable, Commerce is authorized to consider whatever facts are available, 19 U.S.C. § 1677e(a), and to "use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available" when the party has "failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b)(1). *See Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1373 (Ct. Int'l Trade 2019) ("[T]he use of 'facts otherwise available,' to fill in gaps, applies when necessary information is lacking, regardless of the reason for its absence . . . An adverse inference, on the other hand, may only be drawn where the reason underlying the absence of necessary information was the respondent's failure to cooperate to 'the best of its ability,' that is, where the

respondent failed to do the maximum it was able to do.") (citation omitted).

Commerce is authorized to draw an adverse inference and to apply the highest dumping margin when the respondent fails to do the maximum. *See Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1361 (Fed. Cir. 2017) (adverse inference based on adverse facts available may be appropriate when an interested party has been notified of a defect in its questionnaire response yet continues to provide a defective response).

Section 1677e(a)(2)(D) requires that the authorization to rely on adverse facts available is subject to § 1677m(d), which requires Commerce to provide notice and an opportunity to remedy a deficiency. Commerce has no authority to apply adverse facts and inferences unless the respondent has failed to provide requested information when notified of the deficiency, and has not acted to the best of its ability in responding to such requests. 19 U.S.C. § 1677e(a). *See also Canadian Solar Inc. v. United States*, 537 F. Supp. 3d 1380, 1398 (Ct. Int'l Trade 2021) (holding that "Commerce must give Canadian Solar an opportunity to correct any deficient information"); *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1401 (Ct Int'l Trade 2021) ("Commerce must raise identified deficiencies such as this one and provide respondents with an opportunity to explain, correct or supplement it.").

Commerce is permitted by 19 U.S.C. § 1677e(b)(1)(A) to draw adverse inferences "in selecting from the facts available" when "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information." *Taian Ziyang Food Co. v. United States*, 637 F. Supp.2d 1093, 1118 (Ct. Int'l Trade 2009). To this end, Commerce "must make a finding that a party has failed to act to the best of its ability when complying with a request for information from Commerce." *Id.* Here,

Commerce made adverse inferences and relied on adverse facts, although there was no refusal to provide the information whose absence created a gap that required the use of facts available.  Hyundai explains how this error increased the dumping margin:

> [B]ecause it rejected Hyundai's request to submit additional information, the Department was unable to determine whether there was SRR for the remaining sales.  As partial adverse FA, the Department reduced all other U.S. gross unit prices "by the *highest* percentage difference between service-related revenue and the service-related expenses from the SEQUs with usable service-related expenses" on the record.  This substantially increased the dumping margin.

Hyundai Br. 29 (*internal citations omitted*).  "Before making adverse inference, Commerce must examine a respondent's actions and assess the extent of the respondent's abilities, efforts, and cooperation in responding to Commerce requests for information." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed Circ. 2003).  Commerce made no such examination, and on this appeal, the only excuse offered for Commerce's failure to provide Hyundai with a notice of deficiency and the opportunity for remedy, was that Commerce "discovered" the deficiency only on "verification." This argument does not track Commerce's prior position that the deficiency arose when Commerce changed its methodology to satisfy a prior remand from the Court of International Trade.

The government does not assert that Hyundai withheld information, or committed any of the transgressions in § 1677e(a)(1) or (2).  The government agrees that Commerce changed its methodology, and the government acknowledges that "Commerce's analysis has evolved in this proceeding."  Gov't Br. 29.

The Court of International Trade affirmed Commerce's departure from the statute, and departed from its own precedent; *See Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 61 F. Supp. 3d 1306, 1345-48 (Ct. Int'l Trade 2015), *aff'd sub nom Maverick Tube Corp. v. United States*, 857 F.3d 1353 (Fed. Cir. 2017) (Commerce must provide a sufficiently detailed explanation of the "nature of the deficiency" and must permit the respondent to correct the deficiency).

The record herein provides no basis for an adverse inference and recourse to adverse facts available. It is undisputed that any incompleteness of sales data and information could have been remedied by the proffered information, but for Commerce's refusal to permit Hyundai to provide this information. No reasonable justification has been offered for that refusal despite Hyundai's repeated requests. The invocation of adverse inferences and use of partial facts available is unsupported by substantial evidence in the record.

## CONCLUSION

Commerce erred in law, refusing to permit Hyundai to supplement the record with information concerning service-related revenue. Commerce thus relied on incomplete data to determine antidumping duties. The Court of International Trade erred in ratifying that refusal. We vacate the Court of International Trade's affirmance on this issue, and we vacate the court's affirmance of Commerce's recourse to adverse inferences and partial facts available, for that action was a result of the erroneous exclusion of information. We remand with instructions for redetermination of any dumping margin, on complete information provided in conformity with law.

**VACATED AND REMANDED**

COSTS