Slip Op. 23-175

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| PT. ASIA PACIFIC FIBERS TBK, | : | |
| Plaintiff, | : | |
| | : | Before: Richard K. Eaton, Judge |
| v. | : | |
| | : | Court No. 22-00007 |
| UNITED STATES, | : | |
| Defendant, | : | |
| and | : | |
| UNIFI MANUFACTURING, INC. AND NAN YA PLASTICS CORPORATION, | : | |
| Defendant-Intervenors. | : | |

## **MEMORANDUM AND ORDER**

[Commerce's Final Determination is remanded.]

Dated: December 12, 2023

*Lizbeth R. Levinson*, Fox Rothschild LLP, of Washington, D.C., argued for Plaintiff PT. Asia Pacific Fibers Tbk. With her on the brief were *Ronald M. Wisla* and *Brittney R. Powell*.

*Eric J. Singley*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant the United States. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *L. Misha Preheim*, Assistant Director. Of counsel was *Leslie Mae Lewis*, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Julia A. Kuelzow*, Kelley Drye & Warren LLP, of Washington, D.C., argued for Defendant-Intervenors Unifi Manufacturing, Inc. and Nan Ya Plastics Corp. With her on the brief were *Paul C. Rosenthal*, *David C. Smith*, and *Melissa M. Brewer*.

Eaton, Judge: This case involves the U.S. Department of Commerce's ("Commerce" or the "Department") final affirmative antidumping determination in the investigation of polyester

textured yarn from Indonesia. *See Polyester Textured Yarn From Indonesia*, 86 Fed. Reg. 58,875 (Dep't of Commerce Oct. 25, 2021) ("Final Determination") and accompanying Issues and Decision Mem. (Oct. 18, 2021) ("Final IDM"), PR 240; *see also Polyester Textured Yarn From Indonesia, Malaysia, Thailand, and the Socialist Republic of Vietnam*, 86 Fed. Reg. 71,031 (Dep't of Commerce Dec. 14, 2021) (order).

By its motion for judgment on the agency record, Plaintiff PT. Asia Pacific Fibers Tbk ("Plaintiff" or "Asia Pacific"), a manufacturer of the subject yarn and a mandatory respondent in the investigation, challenges the Final Determination, which resulted in Plaintiff being assigned a rate of 26.07%. *See* Pl.'s Mem. Supp. Mot. J. Agency R. ("Pl.'s Br."), ECF No. 24; Pl.'s Reply Br., ECF No. 37. In particular, Plaintiff disputes Commerce's use of "total adverse facts available"[1] when determining its final antidumping rate—a change from the preliminary determination, in which Commerce used Asia Pacific's reported information. Plaintiff contends that Commerce's use of adverse facts available in the Final Determination was unlawful because it was based on the results of an unreasonable verification procedure. Plaintiff asks the court to remand this case to Commerce "with instructions to conduct an on-site or remote verification and to revise its final determination consistent with this Court's opinion." Pl.'s Reply Br. at 10.

Defendant the United States ("Defendant"), on behalf of Commerce, opposes Plaintiff's motion. *See* Def.'s Resp. Pl.'s Mot. J. Agency R. ("Def.'s Br."), ECF No. 32.

---

[1] "'Total adverse facts available' is not defined by statute or agency regulation. Commerce uses this term 'to refer to [its] application of adverse facts available . . . to the facts respecting all of [a respondent's] production and sales information that the Department concludes is needed for an investigation or review.'" *BlueScope Steel Ltd. v. United States*, 45 CIT __, __, 548 F. Supp. 3d 1351, 1354 n.2 (2021) (emphasis omitted) (quoting *Nat'l Nail Corp. v. United States*, 43 CIT __, __, 390 F. Supp. 3d 1356, 1374 (2019)). In other words, Commerce assigns an antidumping rate based entirely on facts selected using an adverse inference, ignoring all of a respondent's information.

Defendant-Intervenors Unifi Manufacturing, Inc. and Nan Ya Plastics Corporation ("Defendant-Intervenors"), U.S. manufacturers of polyester textured yarn and petitioners in the underlying investigation, also oppose the motion. *See* Def.-Ints.' Resp. Opp'n Pl.'s Mot. J. Agency R. ("Def.-Ints.' Br."), ECF No. 34.

The court's jurisdiction lies under 28 U.S.C. § 1581(c) (2018) and 19 U.S.C. § 1516a(a)(2)(B)(i) (2018). For the following reasons, the Final Determination is remanded to Commerce for further action in accordance with this Memorandum and Order.


**BACKGROUND**

The facts of this case unfolded against the backdrop of the COVID-19 global pandemic. On November 17, 2020, Commerce initiated an antidumping duty investigation of polyester textured yarn from Indonesia, covering the period from October 1, 2019, to September 30, 2020. *See Polyester Textured Yarn From Indonesia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 74,680, 74,681 (Dep't of Commerce Nov. 23, 2020). Asia Pacific was selected as a mandatory respondent.

On December 7, 2020, Commerce issued its initial antidumping questionnaire to Asia Pacific. *See* Asia Pacific Initial Questionnaire (Dec. 7, 2020), PR 38. Section A of the questionnaire included questions about Asia Pacific's organization, accounting practices, markets, and merchandise. *Id.* at G-1. Sections B and C covered, respectively, the company's sales in the home market, i.e., Indonesia, and its sales in the United States. *Id.* at G-2. Section D asked for information regarding the company's cost of production, including its production process, financial accounting, and cost accounting. *Id.* at G-2, D-2.

Between December 2020 and February 2021, Asia Pacific filed four requests to extend the time to respond to Sections A, B, C, and D,[2] citing challenges presented by the pandemic. *See, e.g.*, Asia Pacific's Secs. B-D Extension Request (Jan. 11, 2021) at 2, PR 62 ("Preparation of the response is further complicated by the COVID-19 pandemic."); Asia Pacific's Third Sec. D Extension Request (Feb. 1, 2021) at 2, PR 77 ("Asia Pacific's chief accountant was out of the office for several weeks after contracting the COVID-19 virus, and was unable to assist with preparation of the Section D Response."). Commerce granted each of the requests, and the company filed its responses by the extended deadlines.[3]

Upon review of Asia Pacific's initial questionnaire responses, Commerce found that additional information was required to support the company's reported cost and sales data, including missing source documentation. Commerce provided Asia Pacific with notice of the nature of these deficiencies and an opportunity to remedy or explain them by issuing supplemental questionnaires, pursuant to 19 U.S.C. § 1677m(d).[4] In total, Commerce issued six supplemental questionnaires.

---

[2]         *See* Asia Pacific's Sec. A Extension Request (Dec. 23, 2020), PR 51; Asia Pacific's Secs. B-D Extension Request (Jan. 11, 2021), PR 62; Asia Pacific's Second Sec. D Extension Request (Jan. 26, 2021), PR 72; Asia Pacific's Third Sec. D Extension Request (Feb. 1, 2021), PR 77.

[3]         *See* Asia Pacific's Sec. A Quest. Resp. (Jan. 5, 2021), PR 57 & 58; Asia Pacific's Secs. B & C Quest. Resp. (Jan. 28, 2021), PR 76; Asia Pacific's Sec. D Quest. Resp. (Feb. 9, 2021), PR 81.

[4]         Section 1677m(d) states:

If [Commerce] . . . determines that a response to a request for information . . . does not comply with the request, [Commerce] . . . shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations

Between February and May 2021, Asia Pacific sought six extensions of time to file responses to the supplemental questionnaires, again citing challenges presented by the pandemic.[5] *See, e.g.*, Asia Pacific's Extension Request (May 5, 2021) at 2, PR 156 ("[T]he top two company officials at [Asia Pacific] responsible for overseeing the company's responses to Commerce's questionnaires are currently stuck in India with no means to return to Indonesia. Due to the worsening COVID-19 pandemic in India, there are no outbound flights from India to Indonesia. Consequently, the company officials must also work and communicate remotely with their staff, which complicates the process to finalize the response."). Commerce granted each of the requests, and the company filed its responses by the extended deadlines.[6]

On May 26, 2021, Commerce issued its preliminary determination that subject merchandise was sold during the period of investigation at less than fair value. *See Polyester*

---

. . . under this subtitle. If that person submits further information in response to such deficiency and either—

(1) [Commerce] . . . finds that such response is not satisfactory, or

(2) such response is not submitted within the applicable time limits,

then [Commerce] . . . may, subject to subsection (e), disregard all or part of the original and subsequent responses.

19 U.S.C. § 1677m(d).

[5]     *See* Asia Pacific's Extension Request (Feb. 22, 2021), PR 89; Asia Pacific's Extension Request (Mar. 17, 2021), PR 105; Asia Pacific's Extension Request (Mar. 23, 2021), PR 107; Asia Pacific's Extension Request (Apr. 15, 2021), PR 130; Asia Pacific's Extension Request (May 5, 2021), PR 156; Asia Pacific's Extension Request (May 14, 2021), PR 165.

[6]     *See* Asia Pacific's First Suppl. Secs. A-C Quest. Resp. (Mar. 3, 2021), PR 95 & 96; Asia Pacific's Second Suppl. Secs. A-C Quest. Resp. (Apr. 26, 2021), PR 144; Asia Pacific's Third Suppl. Secs. A-C Quest. Resp. (May 19, 2021), PR 167; Asia Pacific's First Suppl. Sec. D Quest. Resp. (Mar. 30, 2021), PR 111; Asia Pacific's Second Suppl. Sec. D Quest. Resp. (May 11, 2021), PR 162; Asia Pacific's Third Suppl. Sec. D Quest. Resp. (June 22, 2021), PR 203.

*Textured Yarn From Indonesia*, 86 Fed. Reg. 29,742 (Dep't of Commerce June 3, 2021) ("Preliminary Determination") and accompanying Preliminary Decision Mem. (May 26, 2021) ("PDM"), PR 170. For the Preliminary Determination, Commerce relied on the information reported by Asia Pacific in its initial and supplemental questionnaire responses that had been filed through May 19, 2021.[7] Based on the information placed on the record by Asia Pacific, Commerce calculated an individual preliminary antidumping margin for the company of 9.20%. *See* Preliminary Determination, 86 Fed. Reg. at 29,743.

Following the Preliminary Determination, Commerce conducted verification of the information on which it would rely to make its Final Determination. *See* 19 U.S.C. § 1677m(i)(1) (requiring that Commerce "shall verify all information relied upon in making . . . a final determination in an investigation"). Because of pandemic travel restrictions, verification did not take place on-site at Asia Pacific's offices in Indonesia, but rather by way of questionnaire. *See* Revised Quest. in Lieu of On-Site Verification (Aug. 4, 2021) ("Verification Questionnaire"), PR 217.

In the Verification Questionnaire, Commerce asked Asia Pacific to provide information and documents, including source documents, that would allow the Department to verify the company's reported sales and costs. For example, in the sales section, the questionnaire instructed Asia Pacific to perform traces of five reported home market sales and five reported U.S. sales. For each sale, Commerce asked for a sales-trace package, which included sales-related documents such as invoices, records of payments, and general ledger pages, as well as a detailed narrative

---

[7]     The third and final supplemental Section D questionnaire was issued after the publication of the Preliminary Determination. *See* Third Suppl. Sec. D Quest. (June 15, 2021), PR 197. Asia Pacific timely filed its response on June 22, 2021. *See* Asia Pacific's Third Suppl. Sec. D Quest. Resp. (June 22, 2021), PR 203.

explanation. *See* Verification Questionnaire at 4-5 ("Commerce officials should be able to follow the sales trace through from one page to the next, guided by annotations to the actual documents submitted and a thoroughly detailed narrative description."). Asia Pacific was asked to explain how each component of the reported sales information, e.g., in its sales databases, linked to source documents that were maintained in the normal course of the company's business. *Id.* Similarly, in the cost section of the Verification Questionnaire, Commerce instructed that "[a]ll worksheets and supporting documentation must be submitted with narrative responses that will allow the Commerce reviewer to follow the flow of supporting documentation to a worksheet and any adjustments necessary to calculate the submitted costs." *Id.*at 6.

Asia Pacific requested an extension to file its response to the Verification Questionnaire. *See* Asia Pacific's Extension Request (Aug. 10, 2021) at 2, PR 219 ("The continuation of the lockdown in Indonesia does not mean that the companies cannot respond to the questionnaire, but it does mean that it is a slow and laborious challenge that requires more time than would ordinarily be the case."). Commerce extended Asia Pacific's deadline by one day.

On August 12, 2021, Asia Pacific timely filed its verification response. *See* Asia Pacific's Resp. Revised Quest. in Lieu of On-Site Verification (Aug. 13, 2021) ("Verification Response"), PR 221.

On August 31, 2021, three weeks after the Verification Response was filed, Commerce issued a briefing schedule for administrative case briefs. *See* Briefing Schedule (Aug. 31, 2021), PR 223; *see also* 19 C.F.R. § 351.309(c)(1)-(2) ("Any interested party or U.S. Government agency may submit a 'case brief,'" and "[t]he case brief must present all arguments that continue in the *submitter's view* to be relevant to the Secretary's final determination." (emphasis added)). Affirmative case briefs were due on September 7, 2021.

The September 7 deadline came and went, and Asia Pacific did not submit an affirmative case brief. It is important to note that, by that point in the proceeding, Commerce had not reported its verification results by way of a verification report, phone call, or any other method.[8] *See* 19 C.F.R. § 351.307(c) ("The Secretary will report the methods, procedures, and results of a verification under this section prior to making a final determination in an investigation or issuing final results in a review."). Indeed, Commerce never produced a verification report. Thus, news of the deficiencies and results of verification would come only in the Final Determination, i.e., well after the deadline for filing affirmative case briefs. *See id.* § 351.309(c)(2) ("The case brief must present all arguments that continue in the submitter's view to be relevant to the Secretary's *final determination*." (emphasis added)).

On October 18, 2021, Commerce issued the Final Determination. Based on deficiencies in Asia Pacific's Verification Response, Commerce found, for the first time, that the use of facts available was required under 19 U.S.C. § 1677e(a). *See* Final AFA and Selection of AFA Rate for PT. Asia Pacific Fibers Tbk (Oct. 18, 2021), PR 238, CR 284. This was a departure from the Preliminary Determination, in which Commerce had used Asia Pacific's reported information to calculate an antidumping rate for the company.

In particular, Commerce found deficiencies in the sales and costs sections of Asia Pacific's Verification Response, regarding source documents. Regarding sales, Commerce found that the

---

[8]     Defendant-Intervenors filed an affirmative case brief, urging Commerce to apply adverse facts available in the Final Determination. They argued that Asia Pacific had failed to provide requested sales and cost information in its Verification Response. *See* Pet'rs' Admin. Case Br. (Sept. 10, 2021), PR 228. They did not argue for adverse facts available based on verification failures as reported by Commerce. Defendant-Intervenors, of course, were as unaware as Plaintiff that Plaintiff had failed verification. Asia Pacific filed a rebuttal to Defendant-Intervenors' case brief, in which the company argued that the use of adverse facts available, based solely on its Verification Questionnaire answers, was not warranted. *See* Asia Pacific's Admin. Rebuttal Br. (Sept. 21, 2021), PR 235.

company: "(1) submitted untranslated documents, (2) submitted illegible documents, (3) failed to provide documentation to support its spreadsheets used in the calculation of inventory carrying costs, and (4) provided supporting documentation for packing expenses that did not reconcile with the reported packing expenses." Final IDM at 6-7.

> Regarding Asia Pacific's cost verification response, Commerce found that Asia Pacific:
>
> (1) failed to provide necessary supporting information, from its production and accounting systems, for the cost of intermediate raw material inputs detailed on its "cost allocation summary" worksheet, the reported per-unit chip[9] costs, and the reported machine speeds, (2) failed to account for cost differences associated with four of the product characteristics defined by Commerce, and (3) failed to provide various other requested cost data related to its reported per-unit costs.

*Id.* at 7. In other words, for Commerce, because of flaws in the Verification Response regarding both sales and costs, neither Asia Pacific's sales nor its costs could be verified. Thus, "[b]ecause Asia Pacific did not provide complete, reliable, and verifiable information in its verification questionnaire response," the Department found, it "must use facts available to determine Asia Pacific's dumping margin." *Id*.

In the Final IDM, Commerce cited the statutory triggers for the use of facts otherwise available, including § 1677e(a)(2)(D), which provides that if an interested party or any other person "provides . . . information [requested by Commerce] but the information cannot be verified," Commerce shall use "facts otherwise available." 19 U.S.C. § 1677e(a)(2)(D); *see* Final IDM at 7 (citing 19 U.S.C. § 1677e(a)(1), (2)(A)-(D)).

Additionally, Commerce found, again for the first time, that the use of adverse inferences under 19 U.S.C. § 1677e(b) was justified because Asia Pacific had not cooperated "to the best of

---

9        Polyester "chips" are the main raw material in "partially oriented yarn" and "spin drawn yarn," which in turn are used to make "drawn textured yarn," the subject merchandise here. *See* Asia Pacific's First Suppl. Secs. A-C Quest. Resp. (Mar. 3, 2021) at 15, PR 95.

its ability" to provide the information requested in the Verification Questionnaire. Based on the flaws Commerce found in the Verification Response, the Department found "that Asia Pacific's failures have led us to conclude that the company failed to cooperate to the best of its ability and thus [the Department would] use an adverse inference in selecting from among the facts otherwise available." Final IDM at 7.

Ultimately, Commerce disregarded all of Asia Pacific's sales and cost information, using in its place adverse facts available, and assigned the company an antidumping rate of 26.07%, the highest rate in the petition. *Id.* at 8.

## STANDARD OF REVIEW

The court will sustain a determination by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Verification procedures are reviewed for an abuse of discretion. *See Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) ("[W]e review verification procedures employed by Commerce in an investigation for abuse of discretion.").

## LEGAL FRAMEWORK

Under the antidumping statute, Commerce determines if goods are being sold, or are likely to be sold, in the United States at less than fair value by finding the amount by which normal value exceeds export price or constructed export price. *See* 19 U.S.C. § 1673. The margin between the two is used to calculate an antidumping duty rate. *Id.* § 1677(35)(A).

Subsection 1677m(i) of the statute requires that Commerce "shall verify all information relied upon in making . . . a final determination in an investigation." 19 U.S.C. § 1677m(i)(1); *see*

*also* 19 C.F.R. § 351.307(b)(1)(i) ("[T]he Secretary will verify factual information upon which the Secretary relies in: . . . [a] final determination in a[n] . . . antidumping investigation."). "The purpose of verification is 'to test information provided by a party for accuracy and completeness.'" *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343-44 (Fed. Cir. 2021) (quoting *Micron Tech.*, 117 F.3d at 1396).

Commerce has established some verification procedures by regulation, among them the issuance of a verification report. *See* 19 C.F.R. § 351.307(a) ("This section clarifies when verification will occur, the contents of a verification report, and the procedures for verification."). "Pursuant to 19 C.F.R. § 351.307(c), whenever Commerce conducts verification it is required to prepare a verification report, which must contain 'the methods, procedures, and results of a verification.'" *Since Hardware (Guangzhou) Co. v. United States*, 35 CIT 1670, 1680 (2011) (not reported in Federal Supplement) (quoting 19 C.F.R. § 351.307(c)).

The regulations do not set a specific deadline for the verification report, but Commerce must issue the report "prior to making a final determination in an investigation." 19 C.F.R. § 351.307(c) ("The Secretary will report the methods, procedures, and results of a verification under this section prior to making a final determination in an investigation . . . ."); *see also Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,338 (Dep't of Commerce May 19, 1997) (notice of final rule) ("Because the Department's standard practice is to issue verification reports and require service of verification exhibits as soon as possible after verification, the Department does not believe that specific regulatory deadlines are necessary.").

Issuance of the report before Commerce has made its final determination allows an interested party to consider and comment on the report when preparing its administrative case brief, which "must present all arguments that continue in the submitter's view to be relevant to

the Secretary's final determination." 19 C.F.R. § 351.309(c)(2). In other words, the timing of the report is important because it gives the petitioner and the respondent the opportunity, by way of a case brief, to make their final arguments on "the methods, procedures, and results of a verification." *Id.* § 351.307(c).

Verification failures have real consequences for a party in an antidumping investigation. For example, if "information cannot be verified as provided in section 1677m(i)," or one of the other enumerated statutory triggers occurs, Commerce must use "facts otherwise available" when determining the party's antidumping duty rate:

> If—
>     (1) necessary information is not available on the record, or
>     (2) an interested party or any other person—
>         (A) withholds information that has been requested by [Commerce] . . . ,
>         (B) fails to provide such information by the deadlines for submission of the
> information or in the form and manner requested, . . .
>         (C) significantly impedes a proceeding under this subtitle, or
>         (D) *provides such information but the information cannot be verified as
> provided in section 1677m(i) of this title*,
>
> [Commerce] . . . shall, subject to section 1677m(d) of this title, use the facts
> otherwise available in reaching the applicable determination under this subtitle.

19 U.S.C. § 1677e(a) (emphasis added). Thus, where there are factual gaps in the administrative record, for example because a party withholds information, or information cannot be verified, Commerce must fill that gap with facts otherwise available on the record.

Additionally, where Commerce determines that the use of facts available is warranted, it may apply adverse inferences to those facts when selecting from among the facts available, if it makes the requisite additional finding that that party "has failed to cooperate by not acting to the best of its ability to comply with a request for information." *Id.* § 1677e(b)(1).

The application of adverse facts available, then, is a two-step process. "The focus of subsection (a) is respondent's *failure to provide information*," creating a gap in the administrative

record. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003). "The reason for the failure is of no moment." *Id.* "As a separate matter, subsection (b) permits Commerce to 'use an inference that is adverse to the interests of [a respondent] in selecting from among the facts otherwise available,' *only if* Commerce makes the separate determination that the respondent 'has failed to cooperate by not acting to the best of its ability to comply.'" *Id.* (alteration in original) (emphasis added). "The focus of subsection (b) is respondent's *failure to cooperate to the best of its ability,* not its failure to provide requested information." *Id.* That is, only after Commerce has determined that there is information missing, creating a gap in the record, can it apply an adverse inference when selecting from among the facts otherwise available.

At all times, the purpose of the statute is to determine an accurate antidumping margin for a respondent when one is warranted. *See Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States*, 45 CIT __, __, 519 F. Supp. 3d 1224, 1234 (2021) (citing *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible.")).

## DISCUSSION

For purposes of this Memorandum and Order, it is useful to keep in mind that all activity having to do with verification took place during the COVID-19 global pandemic. It is with this in mind that the court will consider both the legality and the reasonableness of the actions of both Plaintiff and Commerce.

Plaintiff's main argument is that Commerce's chosen verification procedure—to use solely the Verification Questionnaire to verify Asia Pacific's reported information—is unreasonable.

Plaintiff points to Commerce's failure to comply with its own regulatory obligation to "report the methods, procedures, and results" of verification prior to the Final Determination, and argues that "[h]ad Commerce issued a verification report, Asia Pacific would have had an opportunity to comment on the agency's findings and this appeal may have not been necessary." Pl.'s Br. at 17; *see* 19 C.F.R. § 351.307(c) ("The Secretary will report the methods, procedures, and results of a verification under this section prior to making a final determination in an investigation or issuing final results in a review."). In addition, Plaintiff argues that Commerce failed, under § 1677m(d), to provide Asia Pacific with notice of the nature of the deficiencies in its Verification Response, and an opportunity to remedy or explain those deficiencies, prior to using adverse facts available in the Final Determination. *See* Pl.'s Br. at 13 ("Commerce did not comply with 19 U.S.C. § 1677m(d), which requires it to provide a respondent with notice of deficient responses (the [Verification Questionnaire] constitutes a questionnaire like any other), and an opportunity to remediate the record, before deciding to rely on facts available.").

Commerce argues that the court should not consider Plaintiff's claims because Asia Pacific failed to exhaust its administrative remedies regarding its verification arguments. *See* Def.'s Br. at 13, 21; *see also* Def.-Ints.' Br. at 10. For Commerce, by failing to raise its objection to the verification procedure at the agency level, including by failing to file an affirmative case brief, Asia Pacific deprived the Department of an opportunity to consider and address it in the Final Determination. *See* Def.'s Br. at 15-17 ("[Asia Pacific] failed to raise its newly found objection to Commerce's verification during the investigation even though it had many opportunities to do so.").

Commerce further argues that even if the court were to consider Plaintiff's arguments regarding the verification procedure, the court must reject them. For Commerce, the failure to issue

a verification report was a permissible exercise of discretion, arguing that "[a] formal verification report is not necessary when all verification questionnaires and responses were placed directly on the record." Def.'s Br. at 17. In other words, for Commerce, there was "no substantial prejudice to any party" because "[t]he verification questionnaire, [Asia Pacific]'s responses, and the detailed final determination addressing these responses were reported on the administrative record and were transparent." *Id.* Commerce also argues that Plaintiff's § 1677m(d) argument lacks merit, citing a recent ruling by this Court:

> To the extent that [Asia Pacific] argues that it was unfairly denied an opportunity to cure verification deficiencies with further explanation or corrective information, this Court has construed 19 U.S.C. § 1677m(d), providing for an opportunity to cure deficiencies, as inapplicable to deficiencies discovered at verification, and that "[v]erification represents a point of no return" – that is, verification is not intended as an opportunity to submit new factual information.

Def.'s Br. at 20 (first citing *Hung Vuong Corp. v. United States*, 44 CIT __, __, 483 F. Supp. 3d 1321, 1355 (2020); and then citing *Goodluck India*, 11 F.4th at 1343-44).

The court finds that the doctrine of exhaustion of administrative remedies does not bar it from considering whether Commerce's verification procedure was reasonable. By statute, this Court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). Normally, the failure to include an "argument in a case brief is a failure to exhaust administrative remedies with respect to that argument because it 'deprives [Commerce] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.'" *Ad Hoc Shrimp Trade Action Comm. v. United States*, 33 CIT 533, 546, 616 F. Supp. 2d 1354, 1366 (2009) (quoting *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946))).

Where, however, Commerce does not address an issue until its final determination, or fails to follow legal requirements intended to put parties on notice of Commerce's findings prior to making its final determination, this Court has found that Commerce unreasonably deprived the

parties of a fair opportunity to raise their objections or comments, and thus, that the exhaustion doctrine did not bar the parties from making their arguments for the first time before the Court.

For example, in *Qingdao Taifa Group Co. v. United States*, Taifa, the mandatory respondent in an administrative review, received an individual rate of 3.82% in the preliminary results, only later to learn, for the first time in the final results, that it was being assigned the China-wide rate of 383.60% based on adverse facts available. *See* 33 CIT 1090, 1093, 637 F. Supp. 2d 1231, 1236 (2009). In that case, Commerce issued a verification report, the information in which ultimately formed the basis of the Department's decision to apply adverse facts available to Taifa. But the report itself did not conclude that Commerce would apply adverse facts available or assign Taifa the China-wide rate. *Id.* at 1093 n.1, 637 F. Supp. 2d at 1236 n.1. Although Taifa did not file an affirmative or rebuttal case brief, the *Qingdao Taifa* Court held that Taifa was not barred by the exhaustion doctrine from challenging the use of adverse facts available: "Because the *Preliminary Results* were favorable to Taifa, and Commerce did not address the [adverse facts available] issue until after the deadline for case briefs or the [China]-wide rate issue until the *Final Results,* Taifa did not have a fair opportunity to challenge these issues at the administrative level." *Id.* at 1093, 637 F. Supp. 2d at 1236-37 ("A party . . . may seek judicial review of an issue that it did not raise in a case brief if Commerce did not address the issue until its final decision, because in such a circumstance the party would not have had a full and fair opportunity to raise the issue at the administrative level.").

Likewise, the Court in *Jacobi Carbons AB v. United States* found that the exhaustion doctrine did not preclude judicial review where, in the final results, after case briefs were filed, Commerce changed the primary surrogate country from Thailand to the Philippines, reasoning that the plaintiffs could not have predicted that change and thus "had no realistic opportunity to present

their arguments before the Department." 38 CIT __, __, 992 F. Supp. 2d 1360, 1367 (2014), *aff'd*, 619 F. App'x 992 (Fed. Cir. 2015).

These cases are instructive with respect to what happened here. Commerce conducted verification by issuing a single Verification Questionnaire on August 4, 2021, and receiving the Verification Response from Plaintiff on August 12, 2021. As noted, Commerce did not issue a verification report after verification was complete. Affirmative case briefs were due on September 7, 2021, but in the absence of a verification report, Plaintiff was unaware that it had failed verification by that date or that adverse facts available would be used in place of all of the information it had reported.

Indeed, it was not until the Final Determination was issued on October 18, 2021, that Commerce announced its finding that Asia Pacific's Verification Response was deficient and that the Department would use adverse facts available in place of the company's reported information—a change from its Preliminary Determination. *See* Pl.'s Reply Br. at 4 ("[Asia Pacific] had no inkling until issuance of the final determination that Commerce would view its [Verification Response] as deficient. [The company] could neither have anticipated the issuance of adverse facts available nor the reasons that Commerce would state in support thereof."). Put another way, Asia Pacific's counsel did not learn, until the Final Determination was published, that its client had failed verification and would be subject to an adverse facts available rate that raised the company's preliminary rate of 9.20% to the final rate of 26.07%. Under the circumstances, it was not unreasonable for counsel to decline to put its client to the expense of filing an affirmative case brief that could not have discussed matters of which they were unaware.

Commerce gives no real explanation in its papers for why it did not follow the regulation and provide the parties with a verification report. In the absence of the verification report, Asia

Pacific did not have a "full and fair opportunity to raise the issue [of the reasonableness of Commerce's verification procedure] at the administrative level." *Qingdao Taifa*, 33 CIT at 1093, 637 F. Supp. 2d at 1236 (citation omitted). Thus, the court finds that Asia Pacific's failure to raise its verification argument in a case brief does not bar judicial review.

Next, the court finds that the failure to produce a verification report was unlawful and that the verification procedure employed in this case was unreasonable and an abuse of discretion. *See Micron Tech., Inc.*, 117 F.3d at 1396. Thus, remand is appropriate.

Here, the COVID-19 global pandemic both prevented Commerce from conducting an on-site verification and hindered Plaintiff from accessing the information needed to answer the Verification Questionnaire. The reasonableness of each party's actions must be judged taking into account the extraordinary circumstances resulting from the pandemic. As noted, Commerce gave no real reason in its papers for not producing a verification report. Even taking into account the pandemic, Commerce's failure to issue a verification report prior to the Final Determination, pursuant to 19 C.F.R. § 351.307(c), was a violation of law because it violated its own regulations and unfair because it did not give Plaintiff a reasonable opportunity to address Commerce's findings in its case brief. *See Since Hardware*, 35 CIT at 1682 ("It is a familiar rule of administrative law that an agency must abide by its own regulations." (quoting *Fort Stewart Schs. v. FLRA*, 495 U.S. 641, 654 (1990))). Had Commerce followed its regulations and issued a verification report, Asia Pacific would have been apprised of the deficiencies that Commerce found in the Verification Response and could have commented on Commerce's verification findings. *See SKF USA Inc. v. United States*, 29 CIT 969, 979-80, 391 F. Supp. 2d 1327, 1336 (2005) ("Part of Commerce's responsibility in making accurate antidumping determinations is to ensure that the parties[] have notice of Commerce's decisions and be permitted to comment on its

methodology and analysis." (citing *NEC Corp. v. United States*, 151 F.3d 1361, 1374 (Fed. Cir. 1998))).

While not precisely on point, a recent Federal Circuit case found that fairness may require that a respondent be afforded a reasonable opportunity to address deficiencies turned up by Commerce at verification. *See Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1384-85 (Fed. Cir. 2022), *modified on denial of reh'g*, No. 20-2114, 2022 WL 17175134 (Fed. Cir. Nov. 23, 2022). This case demonstrates that, at least under some circumstances, a respondent must be given the opportunity to address claimed verification failings.

In the absence of a verification report, Plaintiff was blindsided by the adverse facts available finding in the Final Determination. Asia Pacific could not have predicted that Commerce would change its position from the Preliminary Determination to the Final Determination with respect to using the company's reported information, and thus was not in a position to "present all arguments that continue[d] in [Asia Pacific]'s view to be relevant to the Secretary's final determination." 19 C.F.R. § 351.309(c)(2).

Moreover, Commerce's other actions were unreasonable under the circumstances. When Commerce conducts an on-site verification, it normally gives the respondent an opportunity to go to its file cabinets and produce some information—e.g., backup invoices. Because Commerce neither prepared a verification report nor sent a supplemental verification questionnaire, it is impossible to know whether Plaintiff could have addressed Commerce's questions in its case brief or produced the kind of evidence normally produced at on-site verification, and thus avoid the application of adverse facts available. The special circumstances of the pandemic prevented an on-site verification. The circumstances did not, though, prevent the sending of a supplemental verification questionnaire.

As previous cases have held, prior to any final determination a respondent must be given a fair opportunity to comment on a change in Commerce's position of which it was not aware, particularly when the change in position results in a wholesale change in the outcome. *See Jacobi Carbons*, 38 CIT at __, 992 F. Supp. 2d at 1367 ("[A] party 'is not required to predict that Commerce would accept other parties' arguments and change its decision.'" (quoting *Qingdao Taifa*, 33 CIT at 1093, 637 F. Supp. 2d at 1237)). This is true particularly taking into account the extraordinary circumstances presented by the pandemic.

The result of Commerce's finding that Plaintiff failed verification and the application of adverse facts available was an increase in Asia Pacific's final antidumping rate by nearly 200% of the rate determined in the Preliminary Determination—not an insignificant increase. Though Plaintiff asks the court to remand this case to Commerce with instructions to conduct an on-site or remote verification, this remedy is not necessary. All that is necessary here is that, on remand, Commerce report the "methods, procedures, and results" of verification as provided under 19 C.F.R. § 351.307(c) and provide (1) Asia Pacific a reasonable opportunity to place information on the record addressing any deficiencies found by Commerce; and (2) all parties the opportunity to file case briefs that "present all arguments that continue," in the party's view, "to be relevant to the Secretary's final determination," as provided under 19 C.F.R. § 351.309(c)(2). Commerce shall then reconsider its Final Determination accordingly.

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that this case is remanded for Commerce to comply in all respects with this Memorandum and Order and to support and explain its findings with substantial evidence on the record; it is further

**ORDERED** that, on remand, Commerce must prepare a verification report of the "methods, procedures, and results" of verification as provided under 19 C.F.R. § 351.307(c), and provide (1) Asia Pacific a reasonable opportunity to place information on the record addressing any deficiencies found by Commerce; and (2) all parties the opportunity to file case briefs that "present all arguments that continue," in the party's view, "to be relevant to the Secretary's final determination," as provided under 19 C.F.R. § 351.309(c)(2); it is further

**ORDERED** that, on remand, Commerce shall reconsider its Final Determination, including its finding that the use of adverse facts available was warranted, taking into account any information and arguments that the parties present as relevant to Commerce's Final Determination; it is further

**ORDERED** that the remand results are due ninety (90) days after Commerce has received the parties' information and case briefs; any comments on the remand results shall be due thirty (30) days following the filing of the remand results; and any responses to those comments shall be filed fifteen (15) days following the filing of the comments; and it is further

**ORDERED** that Commerce shall file a status report with the court on or before March 12, 2024.

 	 	 	 	 	 	 	      /s/ Richard K. Eaton
 	 	 	 	 	 	 	 	Judge

Dated:  December 12, 2023
 	 	New York, New York